

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0381-09

## EX PARTE DAVID GARZA

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

PRICE, J., delivered the opinion of the court in which MEYERS, WOMACK, JOHNSON, KEASLER and HERVEY, JJ., joined. KELLER, P.J., and COCHRAN, J., dissented.

### O P I N I O N

After the jury was empaneled and sworn in this misdemeanor prosecution for driving while intoxicated, but before trial commenced, one of the jurors became at least temporarily indisposed for health reasons and the trial was continued for a few days. Ultimately, the trial court declared a mistrial over the appellant's objection. When the case was reset for trial, the appellant filed a pre-trial application for writ of habeas corpus arguing that, because a manifest necessity for the mistrial was lacking, his re-prosecution violated double jeopardy.

The convicting court denied relief, but the court of appeals reversed and remanded the cause to the convicting court, presumably so that it might dismiss the information against the appellant. We granted the State's petition for discretionary review to consider, *inter alia*, whether the court of appeals erred to hold that the trial court should not have granted the mistrial without first exploring the option of proceeding to trial with only five jurors, the appellant having expressed at least a tentative willingness to waive his constitutional right to a full complement of six. We will affirm.

## PROCEDURAL HISTORY

### In the Trial Court

A jury was empaneled and sworn in the appellant's trial for misdemeanor DWI on the afternoon of Monday, August 13, 2007, and then excused for the evening. The next morning, August 14th, the trial court announced on the record that one of the jurors had experienced "a cardiac event" the night before and was hospitalized. The trial court accordingly reset the case for two days later, Thursday, August 16th. When the parties reconvened on the morning of August 16th, the trial court announced that the ailing juror, Mr. Headrick, was still, according to the bailiff, in the hospital as of the afternoon of the 15th, and that, in any event, the doctors would not consent to allow him back to work until he could be given a stress test. Thus, the earliest Headrick would be available was after Tuesday of the following week. But Headrick did convey to the bailiff that "[h]e would love to come back." At this point, the following colloquy ensued:

THE COURT: All right. Well, now, we've got five jurors left; one juror that's, basically, out at least through Tuesday of next week. I don't see how we can proceed at this time, leaving these folks [presumably the other jurors] hanging like that. And, so, does either side have a motion for mistrial?

[PROSECUTOR]: State moves for mistrial, your honor.

[DEFENSE COUNSEL]: Defense objects to a mistrial, Judge.

THE COURT: What's the basis for your objection?

[DEFENSE COUNSEL]: We don't believe that there is manifest necessity. We would request the alternative of scheduling the case for trial next week. I believe the attitude of the juror is that he would like to be on this particular jury panel. He has not conveyed any medical or personal reason that would enable [sic: disable?] him to actually be a member of the jury panel. We're requesting a continuance of the case. So, we're requesting that at some time next week, that the case be continued to then to start the evidence and see if the juror is available at that point in time.

THE COURT: That's if the other jurors are available. We don't know if the other five jurors have any kind of prepaid vacation tickets or plans or so forth and we haven't looked into that at this point. Do you want us to look into that, [Defense Counsel]?

[DEFENSE COUNSEL]: I do request that, Judge. And I would understand if there were other problems with other jurors at that time. But today we don't know. And if the Court is seeking to reset the case for just about a week, then I think it would be more appropriate at that time to figure out whether or not a mistrial would be appropriate.

At this juncture, the trial court delayed ruling on the motion for mistrial, reset the case for the following Wednesday, August 22nd, and instructed the bailiff to try to contact the remaining jurors during the interim and determine their availability for trial the following week.

Early afternoon of the same day, August 16th, the parties once again gathered on the

record for an update from the bailiff.[1]  The State immediately withdrew its motion for mistrial, but nevertheless invited the trial court to grant a mistrial *sua sponte* should "the Court find[ ] that justice or manifest necessity demands that[.]"  The bailiff then reported that Headrick was now at home, but under doctor's care, and reiterated that Headrick would not be released to go to work until after he could undergo a stress test the following Tuesday. Two of the remaining jurors, though "somewhat reluctant," agreed to return for jury duty the following week.  The bailiff left messages for two others, but had not yet heard back from them.  And the fifth remaining juror could not be available on Tuesday (August 21st) or Wednesday (August 22nd) of the following week because of a scheduled business trip.  Upon this news, the trial court proceeded as follows:

> THE COURT: I told the jury on Monday – and I think the record will reflect this – that this trial could take no more than two days, Monday and Tuesday to try.  And it is this Court's experience that when the trial takes considerably longer than what the Court had anticipated, that could create problems with the jury's attitude and the jury's willingness to process information and so forth, in my experience as a judge and as a lawyer for 20 years.  And this Court is deeply concerned about keeping the jury through the weekend and holding through next week beyond Wednesday, when it is even uncertain as to when the traveling juror will be returning back into town.
>
> It is still uncertain whether . . . Mr Headrick, the stricken juror, would even be able to come to court, much less go to work, according to his doctor and his reports to the Deputy whether he will be back.  And, so, it is this Court's opinion that manifest necessity requires that a mistrial be declared in this case and this trial begin anew and that's going to be the order of this

---

[1]  The appellant was not personally present at this afternoon conference, but his trial counsel announced that he had waived any objection to proceeding in his absence.

Court. The Court will declare a mistrial for manifest necessity. And I'm going to order that the defendant and the parties return to this Court Wednesday of next week, August the 22nd 2007, to begin jury selection on the trial of this cause.

[DEFENSE COUNSEL]: For the record, Judge, the defense objects to the mistrial. *This is the jury that the Defendant wants to hear his case*. In the alternative, the defense requests a continuance of the matter. We anticipate – and I think that everybody will agree – that the testimony in the case, this should be a one day trial. The State only has one witness to offer. We don't anticipate that the evidence will take longer than one day in court. A short recess for the jury to come back in one week or two weeks, at the most, is what we're requesting. *And/or, in the alternative, we're requesting to proceed through trial with the remaining jurors that did not have a problem*. It was only the one juror who had a medical need to be absent, who has indicated that he still desires to be on the jury. We anticipate – I don't want to misstate it. He is in the hospital, but it appears there is a high probability of recovery in the near future.

So, we're just asking for a short continuance. And since it will be a one day trial, we don't feel that it's unduly burdensome on the remaining jurors. So, for those reasons, we object.[2]

The trial court expressly denied the appellant's request for a continuance, but did not

acknowledge the appellant's alternative request to proceed to trial with the remaining jurors

in order to preserve "the jury that [the appellant] wants to hear his case."

On the morning of the re-scheduled trial, Wednesday, August 22nd, the appellant filed

a pre-trial application for writ of habeas corpus. In it, he alleged that, by *sua sponte* ordering

the mistrial, the trial court had prematurely terminated the prior proceedings without having

considered "a less drastic alternative." This, he alleged, violated his constitutional right to

---

[2] Emphasis added.

be free from being twice placed in jeopardy for the same offense. Attached to the application was the appellant's affidavit, in which he personally swore:

> My lawyer told me that I had the option to agree or disagree with the mistrial. I chose to object to the mistrial and wanted to proceed with the trial. I also wanted to proceed in trial with the five remaining jurors and have them decide my case if the court would allow. I told my lawyer I my [sic] desire to waive the presence of the juror that was sick and did not come to court.

The trial court denied relief, but granted the appellant permission to appeal.

## In the Court of Appeals

On appeal, the appellant renewed his argument that manifest necessity for a mistrial was lacking. In a published opinion, the court of appeals agreed.[3] The court of appeals found that the record supported the trial court's "implicit determination" that juror Headrick was rendered disabled by his illness, and it proceeded to ask whether the trial court should have considered the option of going forward with the remaining five jurors.[4] Noting that the appellant had requested in the alternative that the trial go forward with five jurors, and that the State had withdrawn its motion for mistrial, "which suggests" that the State had no objection to continuing with five, the court of appeals concluded that the trial court erred not to explore the less drastic alternative of conducting the trial without the full complement of

---

[3]  *Garza v. State*, 276 S.W.3d 646 (Tex. App.—Houston. [1st Dist.] 2008).

[4]  *Id*. at 652.

six jurors.[5]  To the State's argument that the United States Supreme Court has held that the Sixth and Fourteenth Amendments guarantee the right to trial by at least six jurors,[6] the court of appeals replied that the appellant could have opted, and was apparently willing, to waive that constitutional guarantee.[7]  Citing this Court's opinion in *Ex parte Fierro*,[8] the court of appeals held that the trial court erred by declaring a manifest necessity for mistrial without first entertaining the viability of the appellant's suggested alternative.[9]

## On Discretionary Review

In its petition for discretionary review, the State challenges the court of appeals's holding in four respects.  First, the State argues that the court of appeals erred as a matter of law to hold that the trial court was required to consider the alternative of proceeding to trial with an unconstitutional jury complement before it could find a manifest necessity for declaring a mistrial.  The court of appeals should have held, according to the State, that it was within the trial court's discretion to conclude that a jury of five was not in the appellant's best

---

[5]  *Id*. at 652-53.

[6]  *See Ballew v. State*, 435 U.S. 223 (1978) (Georgia procedure permitting trial by jury of five in misdemeanor cases deprived petitioner of the right to trial by jury under Sixth and Fourteenth Amendments, which guarantee the defendant at least six jurors in any criminal case).

[7]  *Garza*, *supra*, at 653.

[8]  79 S.W.3d 54, 57 (Tex. Crim. App. 2002).

[9]  *Garza*, *supra*, at 652-53.

interest, for the reasons expressed by the Supreme Court's opinion in *Ballew* regarding the unreliability of juries composed of fewer than six members. Second, the court of appeals erred to conclude that going to trial with five jurors was a viable alternative in the absence of any state law provision that positively permits a verdict by fewer than six jurors in criminal cases adjudicated in County Courts. Third, the court of appeals failed to take into account the trial court's stated concerns about proceeding to trial, even *with* the five jurors remaining, after the passage of a week or two may have adversely affected (as the trial judge expressed it) "the jury's attitude and the jury's willingness to process information and so forth[.]" The trial court's finding of manifest necessity was within its discretion, the State argues, taking these concerns into account. And fourth, the State argues that the court of appeals erred to find, as a matter of fact, that either the appellant or the State was actually willing to go forward with a jury of less than six—and that, in any event, the trial court clearly was *not*. After a brief exposition of the applicable law, we will address the State's arguments *seriatim*.

## MANIFEST NECESSITY

The Due Process Clause of the Fifth Amendment confers upon a criminal defendant a "valued right to have his trial completed by a particular tribunal[,]" which right "must in some circumstances be subordinated to the public's interest in fair trials designed to end in

just judgments."[10] The premature termination of a criminal prosecution by the declaration of a mistrial, if it is against the defendant's wishes, will ordinarily bar further prosecution for the same offense.[11] Once the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court's declaration of the mistrial.[12] The State must demonstrate a "manifest necessity" for a mistrial, which is to say a "high degree" of necessity,[13] and the trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances.[14] That discretion is abused, we have said, whenever the trial court declares a mistrial without first considering the availability of less drastic alternatives and reasonably ruling them out.[15] But the trial court appropriately exercises its discretion to declare a mistrial—that is to say, manifest necessity for the mistrial exists—when the

---

[10] *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

[11] *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995).

[12] *Arizona v. Washington*, 434 U.S. 497, 505 (1978); *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).

[13] *Arizona v. Washington*, *supra*, at 506; *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002).

[14] *Brown v. State*, *supra* (quoting *Downum v. United States*, 372 U.S. 734, 736 (1963)); *Ex parte Fierro*, *supra*.

[15] *Hill v. State*, *supra*; *Ex parte Fierro*, *supra*; *Brown v. State*, *supra*.

particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal, when it is simply impossible to continue with trial, or when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error.[16] The trial court need not expressly articulate the basis for the mistrial on the record in order to justify it to a reviewing court, so long as manifest necessity is apparent from the record.[17]

## ANALYSIS

### The Unconstitutionality of a Five-Member Jury

In *Ballew*, the Supreme Court held that a state-law scheme that imposed a jury of fewer than six members upon a defendant, even one accused of only a misdemeanor offense, violated his Sixth Amendment right to a jury trial.[18] Relying on empirical studies, the Supreme Court reasoned that juries of less than six members are intolerably unreliable because: (1) "smaller juries are less likely to foster effective group deliberation"; (2) "the data raise doubts about the accuracy of results achieved by smaller and smaller panels"; (3) "the data suggest that the verdicts of jury deliberation in criminal cases will vary as juries become smaller, and that the variance amounts to an imbalance to the detriment of one side,

---

[16] *Hill v State*, *supra*; *Brown v. State*, *supra*.

[17] *Arizona v. Washington*, *supra*, at 516-17; *Hill v. State*, *supra*.

[18] 435 U.S. at 245. The Sixth Amendment right to trial by jury applies to state prosecutions. *Duncan v. Louisiana*, 391 U.S. 145 (1968).

the defense"; and (4) smaller juries risk under-representation of minorities.[19] For these

reasons, the Supreme Court concluded that the Sixth and Fourteenth Amendments confer

upon an accused in state court a constitutional right to insist on the verdict of a jury

composed of at least six members. But the court of appeals was correct to observe that

*Ballew* did not speak to whether the accused may opt to affirmatively *waive* that right, at his

election.[20] Nor did it have to. By the time it came to decide *Ballew*, the Supreme Court had

already established that the advantages of the right to trial by jury are not so indispensable

to the proper functioning of a criminal trial that an accused may not affirmatively waive it,

in whole or in part.[21] "To deny [the accused] his power to do so is to convert a privilege into

---

[19]

 *Ballew v. Georgia*, *supra*, at 232-37.

[20]

 *See Garza v. State*, *supra*, at 653 ("Nothing in *Ballew* suggests that a defendant may not knowingly waive his right to a jury composed of six people if he makes a written waiver in person 'in open court with the consent and approval of the court, and the attorney representing the State. TEX. CODE CRIM. PROC. ANN. art. 1.13(a)[.]'").

[21]

 *Patton v. United States*, 281 U.S. 276 (1930) (holding that right to jury composed of a constitutionally requisite number of jurors may be waived, rejecting numerous "public policy" arguments to the contrary). In *Patton*, the Supreme Court held that an accused could waive a twelve member jury, the number traditionally required by common law. Although the Supreme Court subsequently held that the Sixth Amendment will tolerate a jury of fewer than twelve members, *Williams v. Florida*, 399 U.S. 78 (1970), this holding did not undermine the basic principle announced in *Patton* that public policy does not prevent an accused from waiving his right to whatever number of jurors is constitutionally required, which *Ballew* later established to be six. *See Buck v. State*, 599 S.W.2d 810, 811 (Tex. Crim. App. 1980) ("Appellant also argues that the five person jury was federal constitutional error under *Ballew v. Georgia*, [*supra*]. We hold this right was . . . waived."). Indeed, it was shortly after *Patton* was decided that the Texas Legislature first provided that an accused in a non-capital felony case would be permitted to waive a jury trial and plead guilty. Acts 1931, 42nd Leg., ch. 43, p. 65, eff. April 8, 1931.

an imperative requirement."[22]

Certainly there was no manifest necessity in this case for the trial court to declare a mistrial without at least exploring the option to wait a week, possibly then to conduct the trial with only five jurors. So long as the appellant may waive his constitutional right to a six-member jury, it cannot be said that it was impossible to arrive at a fair verdict, impossible as a practical matter to continue with the trial, or that reversal on appeal would automatically ensue. The court of appeals did not err in this regard.

**Does State Law Prohibit Waiver of a Full Jury in County Court?**

**1.      Government Code Section 62.301**

Article V, Section 17, of the Texas Constitution provides: "A jury in the County Court shall consist of six persons[.]"[23] Article I, Section 15, provides: "The right to trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."[24] These constitutional provisions have been in place since the Constitution of 1876. The Legislature has provided by statute that, once trial has commenced in a felony case, should a juror die or become disabled and no alternate

---

[22]

*Patton v. United States*, *supra*, at 298. *See also Commonwealth v. Nicoll*, 452 Mass. 816, 821, 897 N.E.2d 1226, 1230 (2008) (holding that accused may waive right to jury comprised of six members and that to hold "otherwise would imprison a man in his privileges and call it the Constitution" (citation and internal quotations omitted)).

[23]

TEX. CONST. art. V, § 17.

[24]

TEX. CONST. art. I, § 15.

be available to take that juror's place, "the remainder of the jury shall have the power to render the verdict[.]"[25] Section 62.201 of the Government Code expressly provides for twelve jurors in District Court, "except that the parties may agree to try a particular case with fewer than 12 jurors."[26] There is no comparable statutory provision in either the Code of Criminal Procedure or the Government Code that either mandates or permits a jury of fewer than six members to proceed to verdict in a County Court. In fact, Section 62.301 of the Government Code provides that juries in County Court are composed of "six persons[,]" but contains no exception, as does Section 62.201, expressly permitting the parties to consent to trial by fewer than the constitutional requisite.[27] The State argues that, absent such an express provision in either the Code of Criminal Procedure or the Government Code, the trial court did not abuse its discretion in failing to consider the option of going to trial with the remaining five jurors.

---

[25] TEX CODE CRIM. PROC. art. 36.29(a). This provision, we have said, mandates that the trial continue to verdict under these circumstances. *Hill v. State*, *supra*, at 315. Moreover, Subsection (c) of Article 36.29 permits the parties to agree to allow the jury to continue to verdict in the event that one of the jurors should become disabled even "[a]fter the charge of the court is read to the jury[.]" TEX. CODE CRIM. PROC. art. 36.29(c).

[26] TEX. GOV'T CODE § 62.201. Although this provision derives from a statute that formerly applied only in civil cases, we have held that, since its 1985 re-codification in the Government Code, by its plain language it now applies also to juries in criminal trials. *Hatch v. State*, 958 S.W.2d 813, 815-16 (Tex. Crim. App. 1997).

[27] *See* TEX. GOV'T CODE § 62.301 ("The jury in the county courts and in the justice courts is composed of six persons.")

But this Court and its predecessor, the Texas Court of Appeals, have held for more than a century that the Code of Criminal Procedure *does* at least *implicitly* permit waiver of the right to six jurors in cases tried in County Court.[28] In *Stell v. State*,[29] the Texas Court of Appeals first observed: "In misdemeanor cases the defendant may, it is true, waive his right of trial by jury (Code Crim. Proc., Art. 22 [now Article 1.15]), and this right would carry with it doubtless the further right to agree to a trial by a jury composed of less than six men."[30] Almost thirty years later, this Court cited *Stell* to affirm a conviction in *Mackey v. State*,[31] holding that the defendants had agreed to proceed with a jury of five in a misdemeanor prosecution for adultery and could not complain of any deficiency on appeal.[32] We reiterated

---

[28] *See* TEX. CODE CRIM. PROC. arts. 1.14(a) ("The defendant in a criminal prosecution for any offense may waive any rights secured to him by law . . .") and 1.15 ("No person can be convicted of a felony except upon the verdict of a jury duly rendered . . ."); *Hatch v. State*, *supra*, at 815 n.2 (Code of Criminal Procedure "literally does not say a defendant can waive a jury in a misdemeanor case; it says a felony conviction requires a jury verdict. The absence of such a requirement for misdemeanor cases implied there was no such restriction on misdemeanor defendant's general right of waiver").

[29] 14 Tex. App. 59 (1883). Article 22 of the 1879 Code of Criminal Procedure, in effect when *Stell* was decided, read: "No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded." The very next provision of the 1879 Code, Article 23, read: "The defendant to a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury in a felony case."

[30] *Id*.

[31] 68 Tex. Crim. 539, 151 S.W. 802 (1912).

[32] *Id*. at 540, 151 S.W. at 803.

the observation that "[o]ur statute provides that an appellant in a misdemeanor case can waive a jury altogether. This would carry with it the further right to agree to a trial by a jury composed of less than six men."[33] Within a few years, in *Shulman v. State*, [34] we even granted double-jeopardy relief when a trial court refused to allow a trial to proceed because the child of one of the jurors fell ill and the jury was discharged in the middle of trial, even though the defendant had agreed to "try the case before the remaining five jurors."[35] Along the way we invoked the "well-settled rule . . . in Texas" that "the defendant, under his right to waive a trial by jury, has the further right of agreeing to be tried before less than six jurors."[36] In 1941, in an opinion on rehearing in *Kuhn v. State*,[37] we reiterated that, in a misdemeanor prosecution for possessing alcohol in a dry area for purposes of sale, "a defendant has a right to agree to be tried by a jury of five men."[38] We applied the rule to affirm a misdemeanor conviction as recently as 1980, in *Buck v. State*.[39] There, in an appeal

---

[33] *Id*.

[34] 76 Tex. Crim. 229, 173 S.W. 1195 (1915).

[35] *Id*. at 229-30, 173 S.W. at 1195.

[36] *Id*. at 230, 173 S.W. at 1195.

[37] 142 Tex. Crim. 40, 151 S.W.2d 208 (1941).

[38] *Id*. at 44, 151 S.W.2d at 210.

[39] 599 S.W.2d 810 (Tex. Crim. App. 1980.

from a misdemeanor conviction for driving while intoxicated, we held that the defendant waived his federal constitutional right to proceed with a jury composed of six members, even in the wake of *Ballew*.[40] Finally, in 1997, in *Hatch v. State*,[41] we invoked this line of cases by analogy to hold that, since Article 1.15 of the current code now permits the defendant to waive a jury in a non-capital *felony* prosecution, the rule applying to misdemeanors—that if the right can be waived in whole, it can be waived in part—also applies to non-capital felony cases.[42] This is the line of cases upon which the court of appeals in this case relied to support its holding that the trial court could have explored the option of proceeding to trial with five jurors.[43]

The State argues, however, that Section 62.301 of the Government Code has effectively abrogated this line of cases. The Legislature enacted Section 62.301 of the

---

[40] *Id*. at 811-12.

[41] 958 S.W.2d 813 (Tex. Crim. App. 1997).

[42] *See id*. at 815 ("Since Article 1.15 has been amended to permit waiver of a jury in all noncapital felonies and capital felonies where the prosecution does not seek the death penalty, it is a logical extension of *Mackey* to hold that Article 1.15 carries with it the further right to waive a jury composed of twelve persons in these felonies."). *See also Trinidad v. State*, 312 S.W.3d 23, 27 n.20 (Tex. Crim. App. 2010) (recognizing that the logic in *Hatch* is premised on the holding in *Mackey* that permitting waiver of a jury in a misdemeanor prosecution entails permitting waiver of a full complement of six jurors and proceeding with fewer).

[43] *Garza v. State*, *supra*, at 652 (citing *Mackey*, *Kuhn*, and *Shulman* for the proposition that "when the jury composed of six people is reduced to five jurors due to a juror becoming disabled, the trial court could either declare a mistrial, or alternatively, it could proceed to a verdict with the remaining five jurors if the State and defendant agree").

Government Code in 1985,[44] which simply provides that a jury in county court "is composed

of six persons." It contains no express provision, as Section 62.201 does with respect to

cases tried in district court, allowing the parties to dispense with a full complement of the

constitutionally and statutorily required jurors.[45] But we do not believe the Legislature meant

thereby to annul over a hundred years of this Court's precedents. We have never regarded

the absence of statutory language explicitly *permitting* such a waiver to mean that such a

waiver is implicitly *prohibited*; in fact, quite the opposite—we have always regarded the

absence of statutory language explicitly *prohibiting* such a waiver to mean that it is implicitly

*permitted*. The general provision in the Code of Criminal Procedure that permits a criminal

defendant to waive "any rights secured him by law," we have assumed, includes his right

knowingly to forego a jury comprised of the full constitutional complement.[46] That Section

62.301 of the Government Code does not specifically authorize the parties in County Court

---

[44]

   Acts 1985, 69th Leg., ch. 480, § 1, p. 2061, eff. Sept. 1, 1985.

[45]

   Both Government Code Sections 62.201 and 62.301 derive from a single statutory provision that formerly applied only to civil cases. Vernon's Ann.Civ.St. art. 2191. But in *Hatch v. State*, *supra*, at 815-16, we held that Section 62.201 now applies to criminal cases as well, by virtue of its inclusion in the Government Code. Presumably we would say the same about Section 62.301.

[46]

   *Hatch v. State*, *supra* (invoking predecessor to Article 1.15). *See also Buck v. State*, *supra* (same); *Shulman v. State*, 76 Tex. Crim. 229, 230, 173 S.W. 1195 (1915) (same); *Mackey v. State*, 68 Tex. Crim. 539, 540, 151 S.W. 802, 803 (1912) (same); *Otto v. State*, 87 S.W. 698 (Tex. Crim. App. 1905) (invoking predecessor to Article 1.14, which at that time provided that an accused may waive any right, except the right to trial by jury in a *felony* case); *Stell v. State*, 14 Tex. App. 59 (1883) (invoking predecessor to Article 1.15).

to consent to go to trial with fewer than six members does not mean that such an alternative is forbidden. We effectively harmonize Section 62.301 with Articles 1.14 and 1.15, by holding that, while none of these statutes explicitly prohibits an accused in County Court from waiving a trial by fewer than six jurors, and the first does not expressly permit it, the latter two at least implicitly permit it.

## 2.    *Hill v. State*

The State relies on *Hill v. State*[47] to argue that the trial court was not *required* to consider the option of allowing the appellant to waive a jury of six members, and that absent a statute that would *mandate* proceeding with fewer than six, there was a manifest necessity to declare a mistrial. We do not read our opinion in *Hill* to support this proposition. After the jury was empaneled and sworn in Hill's capital-murder prosecution, one of the jurors suffered a debilitating panic attack, and the trial court declared a mistrial over the objections of both parties.[48] Hill subsequently filed an application for writ of habeas corpus interposing a jeopardy bar to further prosecution.[49] The trial court denied the writ, and Hill was convicted and sentenced to life imprisonment.[50] On appeal, the court of appeals reversed the

---

[47] 90 S.W.3d 308 (Tex. Crim. App. 2002).

[48] *Id*. at 310.

[49] *Id*. at 310-11.

[50] *Id*. at 311.

conviction and dismissed the prosecution on jeopardy grounds, finding no indication in the record that the trial court had considered any less drastic alternative than mistrial.[51]

The State argued on discretionary review in *Hill* that the court of appeals had erred not to abate the appeal and send the cause back to the trial court for further record development.[52] The State contended that, during an in-chambers conference, Hill had refused to proceed to trial with fewer than twelve jurors, but also refused to request a mistrial; under these circumstances, the trial court had no viable option but to *sua sponte* declare a mistrial.[53] For this reason, the State sought an abatement for a hearing to make a record of what happened during this conference.[54] We affirmed the court of appeals's determination that a retrial was jeopardy barred because the trial court had failed to consider less drastic alternatives to mistrial.[55] We rejected the State's argument that the court of appeals should have abated the cause for a hearing because we found there was "nothing that the State could possibly establish at that hearing which would demonstrate manifest

---

[51] *Id.*

[52] *Id.* at 311 & 314.

[53] *Id.* at 314.

[54] *Id.*

[55] *Id.*

necessity."[56]  Because the juror had suffered a medical disability, we held, Article 36.29(a)

of the Code of Criminal Procedure mandated that the trial proceed with the remaining eleven

jurors.[57]  Therefore, even if the State could have proven that the appellant objected to going

to trial with only eleven jurors, under the circumstances the trial court would have been

required by statute to continue with the original tribunal.[58]

Our holding that Hill's retrial was jeopardy barred was not contingent, as the State

seems now to suggest, on our conclusion that Article 36.29(a) is mandatory.  That the statute

was mandatory only meant that we saw no need to abate the cause for further proceedings

before we could ratify the court of appeals's conclusion that no manifest necessity justified

the mistrial.  Along the way, we recognized our holding in *Ex parte Fierro* that, before

declaring a mistrial because of the loss of a juror, a trial court must determine whether the

parties would be amenable to continuing with less than a full complement of jurors.[59]  A trial

court is required by our case law to explore this avenue so long as it is legally permissible;

---

[56]  *Id*. at 315.

[57]  *Id*.  *See* TEX. CODE CRIM. PROC. art. 36.29(a) (providing that, if "after the trial of any felony case begins and a juror dies or . . . becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict").

[58]  *Hill v. State*, *supra*, at 315.

[59]  *Id*. at 314 ("Additionally, in *Ex parte Fierro*, the judge declared a mistrial.  There was nothing in the record to demonstrate that the judge considered less drastic alternatives, one of which would have been 'to determine if the parties would be willing to proceed with fewer than twelve jurors under Tex. Govt. Code, § 62.201.'").  *See Ex parte Fierro*, *supra*, at 57 (same).

it need not be mandated by statute to constitute a less drastic alternative to mistrial.

There is no statutory provision comparable to Article 36.29(a) that requires a County Court to continue with a trial once one of the original six jurors becomes disabled. But there is no constitutional or statutory impediment to its doing so either, so long as the defendant waives his right to trial by a complete jury under Article 1.14, and the State and the trial court are willing to consent to do so under Article 1.13(a). The trial court should have explored that option before *sua sponte* declaring a mistrial. The court of appeals did not err in this case to rely upon our holding in *Fierro* to conclude that manifest necessity was lacking.

### Did the Trial Court Nevertheless Have Discretion to Grant the Mistrial?

Even so, the State argues, a trial court does not abuse its discretion to grant a mistrial *sua sponte* when to do so inures to the defendant's substantial benefit. For this proposition, the State cites the Supreme Court's 1961 opinion in *Gori v. United States*.[60] But *Gori* is distinguishable. The trial court in *Gori* declared a mistrial in order to "forestall" a line of questioning the prosecutor apparently intended to pursue that the trial court believed would have erroneously brought evidence of extraneous misconduct on the defendant's part to the jury's attention.[61] The Supreme Court found that the trial court did not abuse its discretion to grant such an anticipatory mistrial. "Where," the Supreme Court declaimed,

---

[60] 367 U.S. 364 (1961).

[61] *Id*. at 366.

> for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.[62]

The Supreme Court concluded that "we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial."[63]

Here, by contrast, the cause for the delay in trial was the illness of a juror, a circumstance that was unavoidable and that disadvantaged the appellant and the State equally. The appellant nonetheless believed it to be in his best interest to waive his right to go to trial with a complete jury in order to insist upon his right to obtain a verdict from a tribunal he deemed favorable. We do not think *Gori* should be read to permit the paternalistic impulse of the trial court to defeat that legitimate defensive choice. Moreover, the trial court's actual, stated justification for declaring the mistrial—that the resulting postponement of a week or two might affect the "attitude" of the jurors and cause them to lose focus—also does not inure solely to the appellant's benefit. Given these distinctions, we refuse to construe *Gori* to undermine our repeated admonition that a trial court must remain solicitous of the defendant's valued right to proceed to verdict with the tribunal

---

[62] *Id*. at 368.

[63] *Id*. at 369.

originally selected, and does not do so—indeed, abuses its discretion—when it grants a mistrial without first entertaining every reasonable alternative.

The State maintains further that, even if all parties were agreeable to a five-member jury, the trial court reasonably rejected that option because the earliest that the trial could begin was Thursday, August 23rd. To proceed with the original tribunal would have necessitated a week's continuance. Moreover, the record does not affirmatively establish that the five remaining jurors would be available on that date. But the record does not establish that the five jurors would *not* have been available on August 23rd. Two of the jurors told the bailiff that they could be available the following week, and a third indicated only that he could not be available on August 21st and 22nd—*not* that he was unavailable thereafter. The record does not show that the other two jurors, who had not yet responded to the bailiff's messages, would be unavailable. The burden of proof is on the State to demonstrate manifest necessity, and it is "a heavy one."[64] The State has not established that the trial court reasonably ruled out the still-extant possibility that a one-week continuance could secure the appellant's right to obtain a verdict from the tribunal originally selected to try him.

The same can be said about the justification for the mistrial that the trial court actually asserted on the record. The trial court expressed concern that a delay "could create problems with the jury's attitude and the jury's willingness to process information and so forth[.]" This

---

[64] *Arizona v. Washington*, *supra*, at 505.

was not a situation, however, in which a trial had already commenced and a jury would be expected to retain information over the course of a protracted continuance. As the appellant's counsel pointed out without contradiction, neither the State nor the appellant expected the trial itself, once it should begin, to last more than a day's time. The need for a continuance does not, by itself, justify a mistrial,[65] and it had not been determined—at least not by that point in time—that a continuance of more than a week was necessary. The trial court's experience as a lawyer and judge would certainly have justified making inquiries of the jurors whether, in their estimation, beginning the trial after a continuance of such a relatively short duration would in fact negatively impact their "attitude" and detract from their ability to "process information" and otherwise focus on the proceedings. But simply to *assume* that the remaining jurors would shed their sense of civic responsibility and lose their ability to focus on the case after such a short delay from the time of their empanelment, without attempting to test that assumption in any way, pays insufficient deference to the appellant's valued right to finish the trial with the originally selected tribunal. "The discretion to discharge the jury before it has reached a verdict is to be exercised only in very extraordinary and striking circumstances."[66] On the facts presented, we cannot say that the

---

[65] *See Ex parte Little*, 887 S.W.2d 62, 67 (Tex. Crim. App. 1994) (no manifest necessity for mistrial when there was a "less drastic alternative, a continuance until the missing juror could be located").

[66] *Downum v. United States*, *supra* (internal quotations omitted). *See also Ex parte Fierro*, *supra*, at 56 ("Manifest necessity is limited to very extraordinary and striking circumstances.").

State has satisfied its "heavy burden" to show the "high degree" of necessity the Fifth and Fourteenth Amendments require to justify subjecting the appellant to a second trial.[67]

**Must the Record Show Consent to Proceed With Five Jurors?**

Finally, the State argues that the court of appeals erred to conclude that the appellant was willing to waive his right to a six-member jury, much less that the State and the trial court were amenable to consenting to go to trial under those circumstances.[68] It is true that, while the trial court expressly denied the appellant's request for a continuance on the afternoon of August 16th, it did not so much as comment on the appellant's suggestion that the trial proceed with the remaining five jurors. "If appellant truly desired at that moment to proceed with the five remaining jurors," the State observes, "it went unnoticed by the trial court."[69] Moreover, as the State points out, the appellant did not actually execute a waiver of his right to a full jury, and it is axiomatic that the waiver of a constitutional right should not be lightly inferred.

Whether the trial court actually took notice or not, however, the appellant clearly and

---

[67]

*Arizona v. Washington*, *supra*, at 505-506. *See also Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim. App. 1981) (in exercising discretion whether to declare mistrial, trial court "must give adequate consideration to the defendant's double jeopardy right").

[68]

*See* State's Brief, at 22 ("Nothing in the record indicates appellant was willing to waive his constitutional right to a jury of six members, nothing shows the State was willing to consent to proceeding with five members, and apparently the trial court was not willing to sanction going forth with five members.")

[69]

*Id*. at 21-22.

unequivocally broached the option of proceeding to trial with the remaining jurors.[70] To hold that manifest necessity exists only if the appellant fails to obtain an express ruling on the record or to actually execute a waiver would effectively shift the burden from the State to the appellant. The trial court is obliged to consider every less drastic alternative. The fact that the trial court either did not notice the appellant's mention of the alternative to proceed with the remaining jurors, or simply did not heed it, does not relieve it of that obligation. We think the Supreme Judicial Court of Massachusetts properly assigned the burden to the State rather than (as the State seems to advocate) the accused when it recently observed:

> [T]he question is not whether [the accused] executed a valid waiver, but whether there was a "manifest necessity" for declaring a mistrial. Such a necessity would have presented itself if [the accused] had declined to execute a waiver, but the record is clear that neither the judge nor counsel was aware of or even considered the option. Rather, the judge quickly concluded, without taking time to check the law, or offering counsel the opportunity to research the issue and report back, that there were no alternatives to a mistrial.[71]

Under circumstances in which the appellant's counsel at least suggested a willingness to proceed with less than a full complement of jurors, the failure of the trial court even to explore that option cannot be attributed to the appellant, whether or not he obtained an express ruling on his suggested alternative or actually executed a formal waiver.

---

[70] On August 16th, the appellant's counsel told the trial court, "This is the jury that the Defendant wants to hear his case. * * * [I]n the alternative, we're requesting to proceed through trial with the remaining jurors that did not have a problem."

[71] *Commonwealth v. Nicoll*, *supra*, 452 Mass. at 821-22, 897 N.E.2d at 1231.

Likewise, it is incumbent on the State to show that the trial court made an effort to determine whether the State was willing to consent. That the State withdrew its motion for mistrial may not affirmatively prove a willingness to consent, but it at least suggests that possibility. There was no manifest necessity for the trial court to declare a mistrial unless and until it first ruled that possibility out. As for the consent of the trial court itself, the record does not show that the trial court would have refused to consent to proceeding with only five jurors, *per se*. Instead, the trial court thought it imprudent to proceed with five jurors if that meant possibly having to put the trial off for at least a week. For reasons already expressed, we regard that as an insufficient justification for the mistrial. On the present record, it is not clear that the trial court ever considered whether to consent to trying the case with only five jurors.

## CONCLUSION

Having rejected the State's arguments that the court of appeals erred to hold there was no manifest necessity for a mistrial, we affirm the judgment of the court of appeals.


DELIVERED:       May 4, 2011
PUBLISH