

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00004-CR

———————————————

EX PARTE JAMES FLOYD

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. C-010914-00

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant James Floyd's capital-murder prosecution was halted by the trial court's declaration of a mistrial. Appellant then filed an application for writ of habeas corpus in the trial court claiming that his double-jeopardy rights would be violated by a retrial. The trial court denied him relief, and this interlocutory appeal followed.

In a single issue, Appellant claims that the trial court should have granted a mistrial based on prosecutorial misconduct, that the lack-of-sufficient-jurors mistrial that the trial court did grant was not based on manifest necessity, and that those facts should operate to bar his retrial for capital murder. We disagree and affirm the trial court's denial of habeas relief.

## II. Background

A grand jury indicted Appellant for capital murder, and the State elected to pursue the death penalty. On March 6, 2020, a death-qualified jury and two alternate jurors were seated and sworn. Trial was scheduled to begin on July 29, 2020. About two weeks before that was to occur, the trial court removed a juror by agreement between the parties.

On July 27, the State disclosed information regarding the possible mishandling of DNA evidence in the Fort Worth Police Department Crime Lab. Appellant requested an extra four days to review the crime-lab issue; the State did not oppose this request. The trial court granted Appellant's request and continued the trial until

August 10, 2020.

Appellant filed a motion to suppress DNA evidence that had been tested at the crime lab. The trial court conducted a lengthy hearing on this issue of alleged cover-ups in the Fort Worth Police Department Crime Lab and ultimately made findings.

The trial court denied Appellant's *Brady*-based[1] motion for mistrial. That same day, however, the trial court found three more jurors to be "disabled" and excused them with the parties' agreement. Even utilizing the alternate jurors, this still left a panel of only ten. The trial court ordered a mistrial, finding it to be a "manifest necessity."

During 2021, Appellant filed several pro se pretrial applications for writ of habeas corpus. On October 12, 2021, the trial court heard arguments on Appellant's double-jeopardy claims and denied his requests to bar a retrial, stating that "there was a manifest necessity for the declaration of the mistrial."[2]

### III. Standard of review

We review the trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *Ex parte Paxton*, 493 S.W.3d 292, 297 (Tex. App.—Dallas 2016,

---

[1]*Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196 (1963) (holding that due process requires prosecution to disclose favorable evidence to defendant).

[2]Three different judges have so far presided over Appellant's case. Honorable Elizabeth Berry presided over jury selection and hearings on Appellant's *Brady* claim, denied Appellant's prosecutorial-misconduct-based request for mistrial, and granted the juror-based mistrial. Honorable Robert Brotherton held a hearing on Appellant's double-jeopardy claim in October 2021. Honorable George Gallagher denied Appellant's application for writ of habeas corpus in January 2022.

pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and uphold it absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We defer to the trial court's findings of fact supported by the record, especially when the fact findings arise from evaluating credibility and demeanor. *Paxton*, 493 S.W.3d at 297. If resolving the ultimate question turns on applying legal standards, we review the trial court's determination de novo. *Id.*

## IV. The Law

The Fifth Amendment of the United States Constitution provides that no person shall have life or limb twice put in jeopardy for the same offense. U.S. Const. amend. V. Generally, this provision—the Double Jeopardy Clause—protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Adams*, 586 S.W.3d 1, 4 (Tex. Crim. App. 2019); *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015).

In cases tried before a jury, a defendant is placed in jeopardy when the jury is empaneled and sworn, and "[b]ecause jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 829 (1978) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949)). Despite the general prohibition against jeopardy-barred trials, there are two

4

exceptions when a criminal defendant may be tried a second time without violating double-jeopardy principles if the prosecution ends prematurely as the result of a mistrial: (1) if the criminal defendant consents to retrial or (2) there was a manifest necessity to grant a mistrial. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011). The trial court's discretion to declare a mistrial based on manifest necessity must be justified by extraordinary circumstances. *Id.* "As a general rule, manifest necessity exists where the circumstances render it impossible to reach a fair verdict, where it is impossible to proceed with trial, or where the verdict would be automatically reversed on appeal because of trial error." *Parrish v. State*, 38 S.W.3d 831, 834 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

## V. Analysis

In his sole issue, Appellant argues that his retrial for capital murder is barred because, in effect, the trial court *should have* granted his request for a mistrial based on the State's allegedly late disclosure of *Brady* material. In Appellant's estimation, his double-jeopardy protections "should not be gutted by the tangential fact that a mistrial was granted for an unrelated reason," and he further asserts that the mistrial that occurred was not manifestly necessary. But Appellant's rights have not been "gutted"—the law simply does not bar a retrial following the declaration of a mistrial that was a manifest necessity. In short, (1) there was a manifest necessity for the juror-related mistrial that was granted by the trial court, and (2) there was no prosecutorial-misconduct mistrial that could possibly bar a future retrial.

5

## A. Ten jurors are unable to render a verdict in a death-penalty case.

In Texas, a felony defendant may, where the State does not seek the death penalty, waive his right to a jury. *See* Tex. Code Crim. Proc. Ann. art. 1.15 (stating that defendant may, with approval of prosecution, waive his right to be tried by a jury). This right to waive an entire jury carries with it a right to agree to be tried by a jury of fewer than twelve persons. *Hatch v. State*, 958 S.W.2d 813, 815 (Tex. Crim. App. 1997); *see also* Tex. Const. art. V, § 13 (allowing for possibility of continuing trial when no more than three jurors become disabled); Tex. Gov't Code Ann. § 62.201 ("The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors.").

However, death-penalty defendants are specifically excluded by statute from waiving a jury. *See* Tex. Code Crim. Proc. Ann. art. 1.13(a) (stating that defendant in a case "other than a capital felony case in which the state notifies the court and the defendant that it will seek the death penalty" may waive right to jury). Further, as the State points out, the procedure for the punishment phase of a death-penalty case outlined in the Code of Criminal Procedure would appear to prohibit a ten-person jury: "The court shall charge the jury that . . . it may not answer any issue submitted under Subsection (b) of this article 'yes' unless it agrees unanimously[,] and it may not answer any issue 'no' unless 10 or more jurors agree." *Id.* art. 37.071, § 2(d)(2); *see also id.* at § 2(f)(2) (mandating the use of this 10–2 requirement in the court's instructions to a death-penalty jury). Obviously, the legislature could not have intended that a

6

"unanimous" vote of "yes" for a twelve-person jury would be mathematically identical to a unanimous "no" vote of a ten-person jury.[3]

Therefore, it is not feasible for a death-penalty defendant to consent to a ten-person jury at his trial, and there was a manifest necessity for the trial court in Appellant's case to declare a mistrial. Accordingly, the Double Jeopardy Clause does not bar Appellant's retrial.

## B. No prosecutorial misconduct could have barred Appellant's retrial.

Appellant also argues that he was forced to demand a mistrial based on the intentional misconduct of the prosecution (i.e., failing to disclose *Brady* evidence until after the jury was sworn but before the beginning of trial) and—for that reason—his double-jeopardy rights would be violated by forcing him to stand trial again. When a trial court *grants* a defendant's motion for mistrial, a second prosecution is not jeopardy barred unless the prosecutor's conduct giving rise to the motion was intended to provoke the defendant into moving for a mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S. Ct. 2083, 2088 (1982); *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (adopting the *Kennedy* standard as a matter of state

---

[3]Appellant challenges the trial court's grant of a mistrial in one paragraph, arguing, "Even as a capital case, nothing prohibited the parties from proceeding with ten jurors." For this proposition, Appellant relies on (apart from a general citation to the Texas Constitution) a non-capital case, *Munoz v. State*, No. 08-20-00020-CR, 2021 WL 3558786, at *4 (Tex. App.—El Paso Aug. 12, 2021, no pet.) (not designated for publication) (allowing ten jurors to render verdict when defendant agreed). *Munoz* is distinguishable from a death-penalty situation, like Appellant's, in which the defendant appears to be statutorily prohibited from waiving any jurors.

7

constitutional law); *see also Ex parte Masonheimer*, 220 S.W.3d 494, 507–09 (Tex. Crim. App. 2007) (applying *Kennedy* to the State's "intentional" failure to disclose exculpatory evidence); *Wheeler*, 203 S.W.3d at 323–24 (setting out list of nonexclusive objective factors to assist court in assessing whether prosecutor intended to provoke defendant into moving for mistrial); *Ex parte Roberson*, 455 S.W.3d 257, 260 n.1 (Tex. App.—Fort Worth 2015, pet. ref'd) (noting that *Wheeler* was subsequently limited to intentional conduct).

Appellant's analysis is flawed for the simple reason that double jeopardy is implicated only by an *actual* mistrial occasioned by intentional prosecutorial misconduct. *See Kennedy*, 456 U.S. at 679, 102 S. Ct. at 2091 (holding that double-jeopardy bar is "limited to those cases in which the conduct giving rise to the *successful motion for a mistrial* was intended to provoke the defendant into moving for a mistrial" (emphasis added)).

Here, Appellant may have requested a mistrial based on his allegations of prosecutorial misconduct, but the trial court explicitly denied that request. In *Ex parte Bennett*, the trial court denied a defendant's prosecutorial-misconduct mistrial request but granted a mistrial based on a relationship between a juror and two of the prosecution's witnesses. 245 S.W.3d 616, 618 (Tex. App.—Fort Worth 2008, pet. ref'd). We held that because the actual mistrial had nothing to do with prosecutorial misconduct, there would be no bar to trying the defendant again. *Id.* at 619–20. Appellant is in the same position: his accusation of prosecutorial misconduct was

8

unrelated to the trial court's decision—a decision that was manifestly necessary—to declare a mistrial based on an insufficient number of jurors.

Further, Appellant's misconduct allegation does not come close to having justified a mistrial in any event. As the Court of Criminal Appeals has made clear, a retrial after a prosecutorial-misconduct mistrial is barred only when the prosecution acted with the *specific intent* to goad the defendant into requesting the mistrial or committed misconduct with the *specific intent* to avoid an acquittal. *See Masonheimer*, 220 S.W.3d at 507–09. Here, an employee at the crime lab testified that she had sent an email to the lead prosecutor on July 24, 2020, five days before the trial was scheduled to begin, explaining her belief that some of the policies of the crime lab had been "violated in this case." She also testified that this was the first time that she had communicated with the prosecution about her concerns "regarding the specific case." In fact, she testified that she had completed the report that formed the basis of her email on the night before she sent it. These facts were reflected in the trial court's findings.[4] The prosecution gave this information to the defense three days later on July 27. Whatever the merits of a potential *Brady* issue, there certainly is no evidence that the State intentionally schemed to engineer a mistrial in order to avoid an

---

[4]The trial court found that "the trial team for the prosecution had no knowledge" of these issues before the week of July 20, 2020, and that the crime lab employee "agreed, stating that she did not inform the prosecution team in this case sooner because she did not realize it was an issue in this specific case until looking through the documents in preparation for trial."

acquittal.[5] Appellant's sole argument to the contrary is based on the trial court's finding that members of the District Attorney's office "possessed knowledge of general concerns [in the crime lab] in 2018." Still, however, this tells us nothing about whether the prosecutors *intended* to force the declaration of a mistrial by waiting three days to reveal to the defense the concerns that the crime lab employee expressed in her email.

Finally, Appellant also requests, alternatively, that this case be remanded to the trial court for a hearing "in order to explore the intent of the state actors involved." Because Appellant's double-jeopardy argument fails as a matter of law, however, there is no necessity for a hearing regarding the alleged intent of prosecutors to provoke a mistrial that never occurred. *See Ex parte Howerton*, No. 04-21-00409-CR, 2022 WL 2135577, at *5 (Tex. App.—San Antonio June 15, 2022, no pet. h.) (mem. op., not designated for publication). Additionally, even if the State's intent were relevant, Appellant had the chance to explore this issue during the *Brady* hearings and failed to demonstrate the prosecutors' intent to provoke a mistrial. *See Padilla v. State*, 889 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (per curiam) (refusing to

---

[5]The prosecution gave the defense the lab employee's statement well before the trial even began, and no evidence had been presented before the trial court declared the mistrial. Thus, there is no evidence by which to measure whether the trial was going badly for the State and whether the State was trying to avoid an inevitable acquittal. *See Wheeler*, 203 S.W.3d at 327 (holding prosecutor's improper question was not attempt to avoid acquittal where there was "no indication that this was a trial that the prosecution was losing").

abate appeal for evidentiary fact-finding when hearing would be "highly unlikely" to "provide any relevant facts in addition to those already before us").

Accordingly, we overrule Appellant's sole issue.

## VI. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's order denying relief on Appellant's pretrial application for writ of habeas corpus.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 14, 2022