OPINION
Opinion by
Chief Justice MORRISS.
Before the mistrial was declared during the presentation of evidence in Leonard *411 Pierson, Jr.’s, first jury trial on charges of indecency with a child and aggravated sexual assault of a child,[1] the purported victim, Bianca, had testified on direct examination regarding multiple instances in which she said Pierson sexually assaulted her or at least had sexual contact with her. Defense counsel’s first question on cross-examination caused the trial court to declare a mistrial. The question was, “Did you also make an allegation that [Pierson] did these same things to his own daughter?” [2]
Pierson’s second jury trial resulted in Pierson’s conviction for one count of indecency with a child, enhanced by a prior felony conviction, and seven counts of aggravated sexual assault of a child and in Pierson being sentenced to life imprisonment. A central question before us is whether Pierson’s second trial violated his right to be free from double jeopardy. We affirm the judgment of the trial court because — although (1) Pierson did not consent to the mistrial — (2) the evidentiary ruling was not shown to be incorrect, (3) the finding of manifest necessity was not an abuse of discretion, (4) overruling Pier-son’s relevancy objection was not an abuse of discretion, and (5) the evidence is legally sufficient.

(1) Pierson Did Not Consent to the Mistrial

A bedrock principle of constitutional law is that a State may not put a defendant in jeopardy twice for the same offense. Arizona v. Washington, 434 U.S. 497, 502, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); see also United States v. Newton, 327 F.3d 17, 21 (1st Cir.2003). “[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.” Washington, 434 U.S. at 505, 98 S.Ct. 824. “Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant’s ‘valued right to have his trial completed by a particular tribunal.’ ”[3] Id. at 503, 98 S.Ct. 824.
*412 Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unreasonable accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.
Id. at 503-04, 98 S.Ct. 824; see Ex parte Lewis, 219 S.W.3d 335, 353 (Tex.Crim.App. 2007).
Although a retrial is absolutely prohibited when a trial ends in an acquittal or a conviction, a retrial may not be “automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused.” Washington, 434 U.S. at 505, 98 S.Ct. 824. Under such circumstances, a retrial over the objection of a defendant is permitted only when the prosecutor demonstrates “manifest necessity.” Id. “Neither party has a right to have his case decided by a jury which may be tainted by bias.” Id. at 516, 98 S.Ct. 824. A trial court’s decision to declare a mistrial is reviewed for an abuse of discretion, but “the trial court’s discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances.” See Ex parte Garza, 337 S.W.3d 903, 909 (Tex.Crim.App.2011).
Once a defendant establishes that he or she is being tried for the same offense after a mistrial, the State has the burden to prove that there was manifest necessity for the mistrial. Hill v. State, 90 S.W.3d 308, 313 (Tex.Crim.App.2002). Manifest necessity exists in three situations: (1) “when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal,” (2) “when it is simply impossible to continue with trial,” or (3) “when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error.” Garza, 337 S.W.3d at 909. The State confines its arguments to the first situation — whether a fair trial was impossible. The State argues that, in simply posing the initial question it did, even without an answer to it, the defense committed an egregious error that biased the jury against the State’s case, preventing a fair trial.
Different standards apply to our review if Pierson consented to the mistrial. See Oregon v. Kennedy, 456 U.S. 667, 670, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); Ex parte Masonheimer, 220 S.W.3d 494 (Tex.Crim.App.2007); Lewis, 219 S.W.3d at 371. If there was consent by Pierson, the State is not required to demonstrate manifest necessity. Harrison v. State, 767 S.W.2d 803, 806 (Tex.Crim.App.1989). The State concedes that Pierson opposed the State’s request for a mistrial, and the record supports that position.[4] Pierson did not consent to the mistrial.

*413
(2) The Evidentiary Ruling Was Not Shown to Be Incorrect

Pierson argues that the trial court erred in finding the question improper and that such error requires a finding that manifest necessity did not exist. In Washington, the United States Supreme Court started with the assumption that the statements by defense counsel were error. Washington, 484 U.S. at 505, 98 S.Ct. 824. The Texas Court of Criminal Appeals, however, has permitted questions similar to the question in this case.
The record does not contain the substance of the allegedly false allegation Pierson’s counsel sought to get before the jury with his question. The parties could not agree, at the first trial, concerning what collateral claim had been alleged. The following excerpts contain the entirety of the details presented to the trial court before it declared a mistrial:
[Defense Counsel 1]: The other daughter was questioned by the CAC based on the allegation.
[The State]: That’s not admissible here.
THE COURT: Okay, what’s the nature of the — ?
[Defense Counsel 2]: (Inaudible, whispering)
[The State]: Under 412, no way.
THE COURT: Hold on. We’ve got to have a hearing on the — is the nature of the question that she has made a false outcry against somebody else or that she’s made a true outcry against some other person?
[The State]: He can’t prove that it’s false, but she — in the end of her CAC interview she said that he did it to his daughter too. That’s it. She didn’t say what he did, how he did — I mean, there was nothing. That was the extent of it.
[Defense Counsel 1]: And there was an investigation in that CAC interview and — a full investigation, and nothing came of it.
THE COURT: Well, to introduce evidence that a child has made a false outcry, there has to be evidence that the outcry is actually false. The only reported case that’s ever found that to be the case is Thomas v. State, 669 S.W.2d 420, and that was a case where both the child victim and her mother admitted they were false. Absent an admission from the victim or the victim’s mother that the other outcry against another person was actually false, you can’t get into that they’ve made allegations against other people that were false.
[[Image here]]
THE COURT: Mr. McFarland, let me get you to flesh out your argument a little bit more about the basis for the admissibility of this cross examination.
[Defense Counsel 1]: Your Honor, ... Bianca, at the end of her interview with Karrah at the CAC, ... stated that Mr. Pierson had done the same sorts of *414 things ... against his own daughter, who’s now sixteen years old. So she made an allegation that the alleged perpetrator in her case had done the same types of things to his own biological child.
THE COURT: Okay.
[Defense Counsel 1]: Karrah subsequently interviewed, there was a forensic examination done, of Mr. Pierson’s biological daughter, there at the CAC, where his biological daughter denied any allegations, denied any abuse, and did not make an outcry.
[The State]: The evidence of that is what, his word?
[Defense Counsel 1]: No, the evidence is Karrah’s word when I cross examine her as to that also. And also, we plan to call his biological daughter who is now sixteen to testify that she was never abused by Mr. Pierson.
[[Image here]]
[Defense Counsel 2]: No, sir, Judge, that wasn’t the — my understanding of it was she claimed that this happened in DeKalb in her presence when he abused his daughter, I believe is my understanding.
[The State]: No, that was her cousin.
[[Image here]]
[The State]: She merely said — and Karrah can come and tell you — she merely said that either she thought or she said he even did it to his own daughter. That was the extent of the statement. There was no details, there was no—
[Defense Counsel 2]: He didn’t tell her that.
[Defense Counsel 1]: She just, it just came up in the CAC interview.
THE COURT: So we don’t even really know what the basis for her statement was.
[Defense Counsel 1]: We don’t know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere.
There is still uncertainty as to what the allegation was.[5]
Though the State’s original objection was based on Rule 412 of the Texas Rules of Evidence,[6] the trial court, at the *415 first trial, referred to the question as a “collateral issue” which suggests its decision also may have been based on Texas Rule of Evidence 608. At the second trial, the trial court explicitly referenced Rule 608. Rule 608 forbids inquiry into specific instances of a witness’ conduct for the purpose of attacking or impeaching that witness’ credibility. Tex.R. Evid. 608(b). Exceptions to Rule 608 exist, however. The Texas Court of Criminal Appeals has recognized Rule 613, which permits the use of “extrinsic evidence to show bias or interest[]” as an exception to Rule 608. Billodeau v. State, 277 S.W.3d 34, 40 (Tex.Crim.App.2009) (child’s threat to accuse different person of molestation should have been admitted in defendant’s trial); see Hammer v. State, 296 S.W.3d 555, 566 (Tex.Crim.App.2009) (Billodeau analysis also applies to Rule 412). The court has also recognized an exception when the Texas Rules of Evidence would violate the Confrontation Clause.[7]
Under the Texas Rules of Evidence, evidence of prior false allegations of molestation are normally not admissible to prove the propensity of the child to lie, but are normally admissible for another purpose such as motive or bias. See id. at 565-66; Billodeau, 277 S.W.3d at 40; see also Duke v. State, 365 S.W.3d 722, 725 (Tex.App.-Texarkana 2012, pet. ref'd). “[T]he exposure of a witness’ motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.” Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The trial court correctly held that the evidence of the allegedly false allegation was not admissible to prove the child’s propensity to lie. The case for admitting the allegedly false accusation, though, would have been made stronger to the extent that the evidence tended to demonstrate bias.[8]
It was Pierson’s burden, as the proponent of the evidence, to establish that the question would result in admissible evidence. Vinson v. State, 252 S.W.3d 336, 340 (Tex.Crim.App.2008). Certainly, some causal connection or logical relationship would be required.[9] While Texas caselaw *416 is unclear concerning what quantum of proof is required to establish that allegations of such abuse are false,[10] we need not decide that issue.
The record in this case is not sufficiently developed for us to determine whether evidence of the false allegation at issue was admissible. Although the defense announced an intent to call Pierson’s biological daughter to testify to the falsity of the allegation, the record is unclear concerning what the prior false allegation was. The attorneys disagreed concerning whether Bianca claimed to have personally observed some abuse or to have heard a report of abuse. As summarized by the trial court, “So we don’t even really know what the basis for her statement was.”
The record, further, does not contain any explanation of how these allegedly false allegations are evidence of bias. We note the defense previously alleged the *417 allegations were the result of a bad relationship between Pierson and the child’s mother and argued the false allegations were evidence of a motive to fabricate. An unsupported conclusory allegation of bias is insufficient. The record, however, does not contain any explanation of why the questions were admissible as evidence of bias.
Pierson has failed to meet his burden to prove that the trial court’s eviden-tiary ruling was incorrect. The record fails to establish what the child victim alleged that was false and also fails to establish that her allegation would demonstrate bias. Pierson has failed to show the trial court abused its discretion in finding the question was improper.

(3) The Finding of Manifest Necessity Was Not an Abuse of Discretion

Pierson argues that, even if the trial court’s evidentiary ruling was correct, manifest necessity did not exist because an instruction to disregard would have been sufficient. According to Pierson, the trial court failed to conduct careful deliberation and weighing of alternatives.
A mistrial should be declared only “with the greatest caution, under urgent circumstances, and for very plain and obvious causes.” United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). “The burden of proof is on the State to demonstrate manifest necessity, and it is ‘a heavy one.’” Garza, 337 S.W.3d at 916 (quoting Washington, 434 U.S. at 505, 98 S.Ct. 824). In the words of the Texas Court of Criminal Appeals, manifest necessity is “limited to very extraordinary and striking circumstances.” Little, 887 S.W.2d at 65. “There must be a ‘high degree’ of necessity that the trial come to an end.” Ex parte Fierro, 79 S.W.3d 54, 56 (Tex.Crim.App.2002); see Garza, 337 S.W.3d at 909. The Texas Court of Criminal Appeals has instructed:
The judge is required to consider and rule out “less drastic alternatives” before granting a mistrial. The judge must review the alternatives and choose the one which best preserves the defendant’s “right to have his trial completed before a particular tribunal.” The judge need not expressly state his reasons in the record as long as the basis for his ruling is adequately disclosed by the record.
Hill, 90 S.W.3d at 313 (citations omitted); see Harrison v. State, 788 S.W.2d 18, 22 (Tex.Crim.App.1990); see also Washington, 434 U.S. at 517, 98 S.Ct. 824 (“The state trial judge’s mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find ‘manifest necessity in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion.”).
While a trial court’s decision to declare a mistrial is always entitled to deference, the amount of deference depends on the reasons for the mistrial. In Washington, the United States Supreme Court adopted a sliding scale of deference. One extreme of this sliding scale is jury deadlock, which is granted “great deference,” while at the other extreme are “cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence.” Washington, 434 U.S. at 510, 98 S.Ct. 824. In Washington, the United States Supreme Court determined that the “great deference” end of the scale is appropriate for improper comments that might cause jury bias. Id.; cf Colvin v. Sheets, 598 F.3d 242, 246 (6th Cir.2010) (great deference granted to mistrial based on comment referring to prior hung jury). Similarly, we owe the trial court “great deference” in this case. This is not to say *418 that we grant absolute deference to trial courts. Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). The trial court must exercise “sound” discretion, which requires at a minimum that the court’s reasons be related to the basis of the mistrial ruling and that its decision be rational and responsible. Id.
As Pierson argues, an instruction to disregard will usually cure error associated with an improper question. Simpson v. State, 119 S.W.3d 262, 272 (Tex.Crim. App.2003); Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App.2000); Ovalle v. State, 13 S.W.3d 774, 783 (Tex.Crim.App. 2000) (“In most instances, an instruction to disregard the remarks will cure the error.”). In such cases, though, a mistrial was declared at defendant’s request, not without his or her consent.
Most Texas cases on manifest necessity do not concern evidentiary issues.[11] The facts of this case, though, are similar to the facts considered about ten years ago by Texas’ Second Court of Appeals in Fort Worth. See Ex parte Bruce, 112 S.W.3d 635 (Tex.App.-Fort Worth 2003, pet. dism’d, untimely filed). That court found manifest necessity when the defense counsel violated a motion in limine — in suggesting the victim had admitted to making false allegations — after being told several times by the trial court that the allegation was inadmissible. Id. Although the differences in the language of the questions makes this case a closer call than Bruce,[12] we, like the Fort Worth Court of Appeals, come down on the side of trial court discretion and find manifest necessity.
We conclude that the trial court exercised sound discretion in (a) granting the parties an opportunity to argue their positions on declaration of a mistrial, (b) considering alternatives to a mistrial, and (c) using its discretion to conclude the defense lacked a legitimate basis for the question.
Before declaring a mistrial, the tidal court granted the parties ample opportunity to state them positions on the record as well as ample opportunity to provide authority for those positions. While the trial court may have erred in opining that a recantation was required before evidence of a false allegation was admissible, Pier-son did not direct the trial court to relevant contrary authority. The record contains a lengthy discussion between the trial court and the parties, in the midst of which the trial court took a twenty-four-minute recess to research and consider the issue. The trial court’s actions demonstrate deliberate consideration, rather than a precipitous ruling.
*419 We also disagree with Pier-son’s argument that the trial court failed to consider an instruction to disregard. The Texas Court of Criminal Appeals and the United States Supreme Court have held that explicit consideration is not required, as long as the record supports a finding of manifest necessity. See Washington, 434 U.S. at 517, 98 S.Ct. 824 (rejecting requirement to “articulate on the record all the factors which informed the deliberate exercise of [trial court’s] discretion”); Hill, 90 S.W.3d at 313. Further, the record indicates explicit consideration. Although most of the discussion concerned the admissibility of the evidence, the trial court explicitly rejected a suggestion that an instruction to disregard would be sufficient. The trial court ruled:
So I find that the evidence is not admissible. It is unduly prejudicial — it’s not relevant, first of all, it’s unduly prejudicial. It serves only to interject issues that are collateral which would potentially confuse the jury, and I don’t know how it can be cured with an instruction to the jury. So with that said, I’m going to grant the state’s motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the state, then there’s no jeopardy that attaches.
Thus, the trial court did consider an instruction to disregard, but concluded that an instruction to disregard would not be sufficient to purge the taint from the question. Other than the instruction to disregard, Pierson does not specify what alternatives the trial court failed to consider.
Also, the trial court did not abuse its discretion in determining that Pierson lacked a legitimate basis for the question. Although false allegations may be admissible under the appropriate circumstances, reasonable persons could disagree concerning what Pierson’s intent was in this case. Earlier in the trial, Pierson had sought to introduce evidence of a bad relationship between Pierson and the victim’s mother as a motive for the mother to coach the child to make false accusations. The trial court ruled this information improper. Although the question did not violate a previous evidentiary ruling prohibiting such inquiry or even violate a motion in limine, Pierson had notice that such evidence would likely be opposed by the State and disfavored by the trial court. Despite this advance notice, Pierson was unprepared to cite caselaw or other authority that the question would lead to admissible evidence. In fact, counsel was not even sure what the false statement was. Under interrogation by the trial court, defense counsel’s contention that the question was proper folded rather quickly.
Reasonable persons can disagree concerning whether Pierson realistically intended to get relevant evidence by posing the question or, instead, simply intended to prejudice the jury. Defendants have a right to challenge a witness’ credibility by cross-examination. Pierson was given the opportunity to justify the pursuit of this question, but failed to put up more than a short-lived argument that faltered under questioning by the trial court. It was within the trial court’s discretion to consider the question an improper comment by counsel intended merely to improperly create an impression of untrustworthiness.
We are required to grant the trial court’s evaluation of potential juror bias “great deference.” Ross v. Petro, 515 F.3d 653, 661 (6th Cir.2008). The trial court was able to observe the tone of the question and the body language of witness and defense counsel, which cannot be determined from an appellate record.
While we may not have reached the same decision, we cannot say that the trial court acted irresponsibly or irrationally.
*420 The trial court acted deliberately-not precipitously. The trial court explicitly considered and rejected the alternative of giving an instruction to disregard, and the record provides some support for the trial court’s conclusion that the intent for the question was to prejudice the jury, rather than a realistic attempt to solicit admissible evidence. The trial court exercised sound discretion. Given that we must grant the trial court “great deference,” we are reluctant to find an abuse of discretion under the facts of this case.

(A) Overruling Pierson’s Relevancy Objection Was Not an Abuse of Discretion

Pierson complains that the trial court erred in admitting the expert testimony of Kathy Lach. Freeman, the nurse who performed the examination of the child, was attempting to obtain her certification, but was not certified at the time and did not ultimately obtain her certification. At trial, Pierson objected to Lach’s expert testimony and obtained a running objection, based on “relevancy,” given that Lach had “never examined this child.” Lach testified that only five to ten percent of child abuse victims have trauma and later speculated that the abuse alleged in this case could have occurred without causing trauma. On appeal, Pierson argues that Lach’s testimony was not sufficiently tied to the facts of the case to be relevant and violated the “fit” requirement.
Pierson claims that the fit requirement requires the expert witness to have personally examined the victim. The Texas Court of Criminal Appeals has explained the fit requirement as follows:
Relevance is by nature a looser notion than reliability. Whether evidence “will assist the trier of fact” and is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable. This is not to say that the relevancy inquiry will always be satisfied. See Pierce, 777 S.W.2d at 414-16 (expert could not say which scientific principles he discussed were applicable to facts in case and had no knowledge of witnesses’ testimony); Rousseau [v. State], 855 S.W.2d [666] at 868 [at 668] [ (Tex.Crim.App.1993) ] (expert referred to “studies” and did not discuss whether any factors he planned to discuss would apply to facts of case); Williams v. State, 895 S.W.2d 363, 366 (Tex.Crim.App.1994) (expert failed to connect “generic testimony” to specific facts of ease). The expert must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony. Establishing this connection is not so much a matter of proof, however, as a matter of application.
Jordan v. State, 928 S.W.2d 550, 555 (Tex.Crim.App.1996) (emphasis added); see Vela v. State, 209 S.W.3d 128, 131 (Tex.Crim.App.2006); Morales v. State, 32 S.W.3d 862, 865 (Tex.Crim.App.2000). As noted by the Texas Court of Criminal Appeals in Morales, relevancy “lends itself to a liberal policy of admission of evidence for the jury’s consideration.” Morales, 32 S.W.3d at 865.
An expert may testify through the use of hypothetical questions. Tillman v. State, 354 S.W.3d 425, 429 (Tex.Crim.App.2011). Hypothetical questions satisfy the fit requirement whenever the facts of the hypothetical match the facts of the case being tried. Id. The hypothetical question presented to Lach was “if a thirty year old man inserted his penis in a seven year old child, there would not necessarily be trauma?” Because the facts of this hypothetical arguably match the facts of *421 this case, the relevancy fit requirement has been met.[13]

(5) The Evidence Is Legally Sufficient

Pierson also argues that the evidence of the seven sexual assault convictions is legally insufficient because there is insufficient evidence of penetration.[14] Given the inconsistencies in the child’s testimony and Doctor Erik Jacobson’s testimony that the described events should have resulted in trauma, Pierson argues a rational juror could not have concluded beyond a reasonable doubt that the offenses occurred.
In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court’s judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref d). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury “to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781); Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).
The child’s testimony is sufficient, by itself, to establish penetration and sexual contact. The child testified as follows:
Q Did he touch your privates — your private?
A Yes.
Q Did he touch your private with his private?
A Yes.
Q Did he touch your private with his hands?
A Yes.
Q Did he touch your butt with his private?
A Yes.
Q Did he put his private inside your butt?
A Yes.
Q Did it hurt?
A Yes.
Q Did that happen more than once?
A Yes.
[[Image here]]
Q Did it happen more than six times?
A Yes.
Pierson argues this testimony is inconsistent given that the child had testified seconds earlier that Pierson did not touch her butt with any part of his body other than his hands. Reconciliation of evidentiary conflicts is solely a function of the trier of fact. Mosley v. State, 983 S.W.2d 249, 254 (Tex.Crim.App.1998). A rational juror could have believed the child’s testimony that penetration occurred.
As discussed above, Lach testified a thirty-year-old man can insert his penis in a sevenyear-old child without causing trauma. Dr. Jacobson, the emergency room physician who assisted Freeman in her examination of Bianca, testified that, in his professional opinion, signs of sexual *422 activity would have been present “if a seven year old girl was having repeated sex with a thirty year old man or a twenty-five year old man, both anally and vaginally.” When asked whether he believed, “based on reasonable medical certainty,” that vaginal or anal sexual activity had occurred immediately before the examination, Dr. Jacobson replied that there did not appear to be. Dr. Jacobson testified he had conducted “hundreds” of such examinations.
Although it appears the jury believed Dr. Jacobson’s testimony concerning the alleged assault immediately before the examination, the jury appears to have rejected Dr. Jacobson’s testimony concerning the repeated penetration. Pierson argues that, in order to find him guilty of six counts of sexual assault, the jury would have to believe Lach’s testimony over Dr. Jacobson’s opinion. A rational person could believe a nurse who specializes in sexual assault examinations over an emergency room doctor. Both Lach and Dr. Jacobson testified to extensive experience.[15] While a doctor clearly receives more extensive education, Lach specialized in sexual assault examinations. Dr. Jacobson was an emergency room physician. A rational person could conclude the specialization compensated for the educational disparity.
Further, a rational person would not necessarily have to believe a nurse over a doctor. Dr. Jacobson testified he generally only reviews the nurse’s examination and did not use a culpascope, “basically a microscope,” in his examination of the child. The nurse who conducted the examination of the child was in the process of obtaining SANE certification, but was not certified at the time of the examination. A rational juror could have concluded that the nurse who conducted the examination may have missed trauma.
A rational person could have concluded, beyond a reasonable doubt, that penetration occurred. The evidence is legally sufficient.
For the reasons stated, we affirm the trial court’s judgment.
Dissenting Opinion by Justice MOSELEY.

.The State alleged Pierson repeatedly molested Bianca Shaw Montana, a pseudonym, who was the daughter of his girlfriend. Bianca’s mother testified that, in the early morning hours of November 27, 2008, she walked into the living room to find Pierson on the couch where Bianca was sleeping. Pierson claimed to be rocking Bianca to sleep,' but Bianca's mother pulled back the covers and found that Bianca’s gown was pulled up and her panties were pulled down. The sexual assault examination did not find any evidence of trauma, but DNA consistent with Pierson’s epithelial cells was found on Bianca’s panties. Bianca told the registered nurse who did the examination that the abuse happened every day. Pierson claimed that the allegations were false due to a bad relationship he had with Bianca’s mother. Pierson does not direct us to where in the record there is evidence of a bad relationship. Bianca's mother denied having a fight that evening with Pierson and denied throwing a hammer at him. Pierson did not testify.

. The State immediately objected to defense counsel’s question before Bianca had answered. The State also requested and was granted, over the defense’s objection, a mistrial. The following week, Pierson filed a pretrial writ of habeas corpus and motion to dismiss the indictment. The trial court denied the motion, and a second jury was selected and sworn. The second jury acquitted Pierson of one count of aggravated sexual assault, but found Pierson guilty of the one count of indecency with a child and of the seven remaining counts of aggravated sexual assault.

. Jeopardy attaches when the jury is sworn. See Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); see also Proctor v. State, 841 S.W.2d 1, 4 (Tex. Crim.App.1992).

. At oral argument before this Court, the following exchange occurred:
Justice Carter: Do you agree that the defense does not have to make an objection to a mistrial?
[The State]: The State will concede there is not a need for an objection. I think, in this case, the defense made it known that they did not agree with the mistrial. So I don't think that necessarily comes into issue....
[[Image here]]
Justice Carter: You are saying that it is not required to object-you're agreeing with that.
[The State]: Correct, Your Honor.
The words "I object” are not necessary when an objection is apparent from context. Ex parte Little, 887 S.W.2d 62, 66 (Tex.Crim.App. 1994) (context did not establish consent to mistrial). In determining whether a defendant has consented to the mistrial, we must consid *413 er the totality of the circumstances. Harrison, 767 S.W.2d at 806; Torres v. State, 614 S.W.2d 436, 441-42 (Tex. Crim.App. 1981). Consent, though, will not be inferred from a silent record. Garner v. State, 858 S.W.2d 656, 659 (Tex.App.-Fort Worth 1993, pet. ref’d).
Although Pierson’s attorney did not utter the phrase "I object” or "objection,” the record suggests that Pierson opposed the mistrial. Pierson argued that the question was permissible and, alternatively, asked, “There’s not any way an instruction would cure that?" While Pierson could have made his opposition more clear, the totality of the circumstances fails to establish Pierson consented to the mistrial. Once the trial court announced its intention to declare a mistrial, it was reasonable trial strategy to not further antagonize the trial court by challenging its decision. ■We will not infer consent from a silent record.

. In response to our question at oral argument concerning where the record contains details of the alleged false allegation, Pierson claimed the statement could be found on the video recording of the interview by the sexual assault nurse examiner (SANE) Kathy Lach. The SANE video in this case, though, was not introduced as an exhibit. Immediately before cross-examination of Pamela Freeman, a registered nurse, at the second trial, the following interchange occurred:
THE COURT: Okay. I just wanted to— Ms. Freeman, there's a part of that record that you were reading from—
[[Image here]]
THE COURT: And so, before we — -before it inadvertently comes out, I wanted to have the opportunity to tell you, not in front of the jury, that the part where she apparently says — and I don’t have the statement, but apparently she says something about her stepdad had done this to his daughter or something to that effect.
[Defense Counsel 2]: It’s the very last sentence of the report, where it said her — .
[The Witness]: Yeah, it does. It says something about her cousin.
THE COURT: Okay. Well, that’s what we’re not going to talk about, is—
We also do not have a copy of Freeman’s report in the appellate record.

. The State's objection was based on Rule 412. See Tex.R. Evid 412. Rule 412, though, does not prohibit all impeachment of an alleged sexual assault victim, but only impeachment with reputation or specific instances of past sexual behavior by the alleged victim. By its plain language, Rule 412 only applies to "the alleged victim’s past sexual behavior.” Tex.R. Evid. 412. While Rule 412 is applicable to some alleged false accusations, it is not *415 applicable when the alleged false accusation concerns the sexual behavior of someone other than the alleged victim. The alleged false accusations in this case concerned Pierson’s alleged molestation of his biological daughter, not the alleged victim. Rule 412 is not applicable.

.The United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI, XIV. The Texas Court of Criminal Appeals has observed:
Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules. Thus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence. In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule.
Hammer, 296 S.W.3d at 561 (footnote omitted); see Leza v. State, 351 S.W.3d 344, 360 n. 65 (Tex.Crim.App.2011); cf. Crawford v. Washington, 541 U.S. 36, 40, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (rejecting “firmly rooted hearsay exception” to Confrontation Clause recognized in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

. Evidence can still be excluded if its prejudice substantially outweighs its probative value. Tex.R. Evid. 403; see Hammer, 296 S.W.3d at 565-66 (trial court abused its discretion in finding unfair prejudice substantially outweighed probative value).

. See Gilmore v. State, 323 S.W.3d 250, 266 (Tex.App.-Texarkana 2010, pet. ref'd) (requiring some causal connection between pending charges and testimony for State).

. In general, preliminary questions of admissibility must be established by a preponderance of the evidence. Vinson, 252 S.W.3d at 340 n. 14. The Texas courts, though, have not addressed this issue in the specific context presented here. The trial court concluded a defendant could cross-examine a victim about a prior false allegation only if the victim had admitted the allegation was false. The trial court stated, "It’s not proof by a preponderance of the evidence or proof beyond a reasonable doubt; it's that it’s actually false. That's the standard.” The record, though, is not clear concerning the authority on which the trial court relied. Although the victim admitted maldng false allegations in most cases, the cases do not discuss what quantum of proof is required. Hammer, 296 S.W.3d at 565; Thomas v. State, 669 S.W.2d 420, 423 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd). None of the cases hold that recantation is a requirement. In Karnes v. State, No. 05-92-02719-CR, 1994 WL 67725, 1994 Tex.App. LEXIS 3553 (Tex.App.-Dallas Mar. 4, 1994, pet. ref’d) (not designated for publication), the Dallas court noted that the child admitted lying in all the cases which found false accusations admissible. The Dallas court, however, did not claim that a recantation was required and cited Hughes v. State, 850 S.W.2d 260, 262 (Tex.App.-Fort Worth 1993, pet. ref'd), which suggested false accusations are admissible when there is “some evidence" the allegations were false. In Garcia v. State, 228 S.W.3d 703, 705-06 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd), the Houston court stated a dismissal of the charges and a denial of die allegations was insufficient to show falsity. However, the Fourteenth District did not hold that a recantation was required. Id. Our own research has discovered no Texas cases discussing the quantum of proof required. While Texas courts have stated that the allegations must be shown to be false, they have not announced a requisite quantum of evidence. Lopez v. State, 18 S.W.3d 220, 225 (Tex.Crim.App.2000) ("the prior accusation was never shown to be false”); Garcia, 228 S.W.3d at 705-06 (self-serving denial and dismissal of charges insufficient); Lape v. State, 893 S.W.2d 949, 956 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (no evidence allegations were false). Missouri, Alaska, and Nevada have required a threshold determination based on proof by a preponderance of the evidence. See, e.g., Morgan v. State, 54 P.3d 332, 339 (Alaska Ct.App.2002) (preponderance); State v. Long, 140 S.W.3d 27, 32 (Mo. 2004) (preponderance); Miller v. State, 105 Nev. 497, 779 P.2d 87, 90 (1989) (preponderance). Virginia has adopted a requirement of a "reasonable basis" to conclude the allegations were false. Clinebell v. Commonwealth, 235 Va. 319, 325, 368 S.E.2d 263 (Va.1988). New Mexico and New Hampshire have adopted a standard requiring the allegations be shown to be "demonstrably false.” State v. White, 145 N.H. 544, 765 A.2d 156, 159 (2000) ("demonstrably false”) vacated by White v. Coplan, 399 F.3d 18, 26 (1st Cir.N.H. 2005) (concluding "demonstrably false” requirement unconstitutional as applied); State v. Johnson, 102 N.M. 110, 692 P.2d 35, 43 (Ct.App.1984) ("demonstrably false”). At least one academic commentator has suggested the appropriate standard would be a "good faith basis.” See Jules Epstein, True Lies: The Constitutional and Evidentiary Bases for Admitting Prior False Accusation Evidence in Sexual Assault Prosecutions, 24 Quinnipiac L.Rev. 609, 648 (2006). Although it is not necessary for us to decide which approach should be applicable in Texas, we are dubious of the trial court's requirement of a recantation. We believe a prior allegation can be proven false without a recantation.

. See, e.g., Garza, 337 S.W.3d 903 (when juror had heart attack, manifest necessity did not exist because defense offered to waive right to six jurors); Hill, 90 S.W.3d at 310 (no manifest necessity when trial court could have continued with eleven jurors); Fierro, 79 S.W.3d at 55 (no manifest necessity when trial court could have continued with eleven jurors); Ex parte Brown, 907 S.W.2d 835, 843 (Tex.Crim.App. 1995) (no manifest necessity because State's chemist, who was unavailable after first day of trial, could have testified out of order or supervisor could have testified); Ex parte Hunter, 256 S.W.3d 900, 902 (Tex. App.-Texarkana 2008), pet. dism’d, 297 S.W.3d 292 (Tex.Crim.App.2009) (no manifest necessity because trial court failed to consider retaining juror who served on grand jury); Ex parte Alexander, 141 S.W.3d 798, 799 (Tex. App.-Beaumont 2004, pet. ref'd) (no manifest necessity when trial court could have granted continuance).

. As in Bruce, the witness did not answer the question. The question in Bruce, though, explicitly referenced a false allegation. Bruce, 112 S.W.3d at 638. Bruce’s attorney, in his opening statement, alleged witnesses “will tell you that this summer [D.H.] admitted making a false — " Id. In this case, the language of the question sounded neutral.

. Pierson has restricted his argument to the fit requirement. We are not expressing any opinion concerning the various other requirements for the admission of scientific expert testimony.

. Pierson states in his brief, “Appellant does not challenge the legal sufficiency of the sexual indecency conviction.”

. Dr. Jacobson has been licensed for eleven years. Lach has been a registered nurse since 1995 and a SANE since 2003.