

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0613-13

---

### LEONARD PIERSON, JR., Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

---

**PRICE, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

I join the Court's opinion. I write separately for two reasons. First, while I agree that

the appellant did not satisfy the predicate for impeachment by proof of a prior false

accusation, that does not necessarily mean that the question he posed would invariably be

deemed inappropriate had the proper predicate been laid. Notwithstanding language in this

Court's opinions in *Flannery v. State* and *Hammer v. State*,[1] we have yet to disclaim the

---

[1]  *See Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984) (prohibiting the
impeachment of a witness on a collateral matter);  *Hammer v. State*, 296 S.W.3d 555, 564-65 (Tex.

admissibility of evidence of prior false accusations to impeach the testimony of complaining witnesses in sex offense cases by attacking their general credibility. In this context, the Sixth Amendment right to confrontation may yet be held to trump the general prohibition against impeachment on collateral matters and the prohibition in Rule 608(b) of the Rules of Evidence against impeachment by specific conduct.[2] Second, while I agree with the Court that a reviewing court owes great deference to the trial court's judgment whether an instruction to disregard an inappropriate question obviates the need for a mistrial, I think it worthwhile to acknowledge the appellate presumption of the efficacy of such instructions to disregard, which we entertain whenever the *defendant* argues that only the radical remedy of a mistrial can save him from what he regards as indelible prosecutorial prejudice. Considering the risk that a precipitous mistrial poses to the defendant's "valued right to have his trial completed by a particular tribunal[,]"[3] trial judges should not lightly dismiss the possibility that a stout instruction to disregard will serve to ameliorate any potential for jury

Crim. App. 2009) (suggesting that evidence of prior false accusations by a sexual assault victim should be deemed inadmissible as impeachment, even in the face of the Confrontation Clause, if it is offered simply to impugn her general credibility, because such evidence calls for nothing more than "prohibited propensity" inferences, which violate TEX. R. EVID. 608(b)).

[2] *See* TEX. R. EVID. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.").

[3] *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

contamination—especially from what, as here, amounts to an unanswered question of ambiguous import on defense counsel's part.

## I.

The appellant's first question upon cross-examining the complaining witness in this case was: "Did you also make an allegation that [the appellant] did these same things to his own daughter?" If, in fact, the complaining witness ever claimed to have had *personal knowledge* that the appellant sexually abused his own daughter, and in fact that claim was *false*, asking such a question as a predicate to impeachment *might* have been a permissible exercise of his Sixth Amendment rights under the Confrontation Clause, notwithstanding any contrary rule of evidence that the State might have interposed against its admissibility.[4] Even so, as the court of appeals essentially pointed out,[5] the real problem in this case is that the

---

[4]
*Lopez v. State*, 18 S.W.3d 220, 225-26 (Tex. Crim. App. 2000); *id*. at 227 (Keller, J., concurring). *See also Billodeau v. State*, 277 S.W.3d 34, 40 (Tex. Crim. App. 2009) (citing *Lopez* for the proposition that evidence of prior false accusations may be admissible to impeach the complaining witness in a sex offense case because "this Court has acknowledged that the Confrontation Clause of the Sixth Amendment may require admission of evidence that [TEX. R. EVID.] 608(b) would otherwise bar"); *Palmer v. State*, 222 S.W.3d 92, 95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (evidence of prior false accusations of sexual abuse may be admissible to impeach complaining witness so long as actual falsity is adequately established); *Thomas v. State*, 669 S.W.2d 420, 423 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (Sixth Amendment Confrontation Clause error to exclude evidence of the complaining witness's false prior accusations of rape in a prosecution for aggravated sexual assault of a child).

[5]
*Pierson v. State*, 398 S.W.3d 406, 413-17 (Tex. App.—Texarkana 2013). The court of appeals in this case believed evidence that the complaining witness lied about the appellant having molested his own daughter *could* be admissible if it showed bias on the complaining witness's part, but could *never* be admissible merely as a general attack upon her credibility, *Lopez* and the Confrontation Clause notwithstanding. *Id*. Although our unanimous opinion in *Hammer v. State*, 296

appellant was unable to establish the predicate facts by which he could assert admissibility under such a theory, as required by Rule 104(a) of the Rules of Evidence.[6] The Court today seems to confirm this aspect of the court of appeals's opinion when it concludes that the appellant has "failed to carry his burden as the proponent of the evidence that the victim's answer was admissible."[7] I agree with this. But I wish to emphasize that we have not yet altogether ruled out the possibility that the Confrontation Clause requires that a defendant be permitted to develop evidence of prior false accusations by the complaining witness, at least in sex offense prosecutions, as general evidence of the complaining witness's lack of credibility, notwithstanding Rule 608(b) of the Rules of Evidence.[8]

## II.

I also agree that it cannot be said, based upon the record in this case, that the trial judge acted "irrationally[,]" "irresponsibly," or "precipitately in response to the prosecutor's request for a mistrial."[9] It is certainly true "that the extent of the possible bias" that may have

---

S.W.3d at 564-66, might suggest such a conclusion, and we did cite several federal cases in *Hammer* for that proposition, *id*. at 565 n.26, we did not formally so hold in *Hammer*. Nor does the Court expressly so hold today.

[6] TEX. R. EVID. 104(a).

[7] Majority Opinion at 15 (citing *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008)).

[8] *See* notes 4 & 5, *ante*; TEX. R. EVID. 608(b).

[9] *Arizona v. Washington*, 434 U.S. 497, 514-15 (1978).

been engendered by the inappropriate question in this case "cannot be measured," and "that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions."[10] I am inclined to think that an instruction to disregard in this case would have sufficed to remove the potential for juror bias. Indeed, I do not think there was a grave potential for actual juror bias here, since the motive behind the question would not have been immediately apparent to the jury and, in any event, there was no reply.[11] "Nevertheless, the overriding interest in the evenhanded administration of justice requires that [a reviewing court] accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper" question.[12]

In the further interest of the evenhanded administration of justice, however, I feel compelled to remind the bench and bar of our appellate presumption of the efficacy of jury instructions. When defendants request mistrials on account of prosecutorial indiscretions,

---

[10]
*Id*. at 511.

[11]
It is not altogether apparent to me that the jury would have realized that the appellant's question was meant as a predicate to impeaching the complaining witness. While that may be "the only reasonable interpretation" that a discerning judge or lawyer might place on the question, *see* Majority Opinion at 14 (quoting the trial court), the jury more likely found itself simply puzzled that the appellant's lawyer would ask such a seemingly self-immolating question. In that event, the potential for burning the *State* would have been purely theoretical; an instruction to disregard should have been more than sufficient to extinguish the flame.

[12]
*Washington*, 434 U.S. at 511.

we have been quick to recognize the ameliorative impact of judicial instructions to disregard:

> In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence this [C]ourt puts its faith in the jury's ability, upon instruction, consciously to disregard the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations.[13]

Every case must be considered on its own facts, of course, but we have observed that reversal of a conviction for the failure of the trial court to declare a mistrial following an instruction to disregard an improper question is "rare."[14]  Sauce for the defendant's goose ought to be sauce for the prosecutor's gander.

Moreover, we have typically relied upon the efficacy of instructions to disregard in the context of resolving issues of procedural default.  A defendant who requests a mistrial without first seeking an instruction that the jury disregard some objectionable and potentially incendiary matter that has made its way into evidence has only preserved error for appeal if the appellate court can say that the instruction to disregard would not, in any event, have had the desired effect on the facts of the particular case.[15]  In that context, too, we have

---

[13]
*Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988) (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)) (citations and internal quotation marks omitted).

[14]
*Swallow v. State*, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992), *overruled on other grounds by Randolph v. State*, 353 S.W.3d 887, 895 (Tex. Crim. App. 2011).

[15]
*See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) ("[T]he request for an

essentially applied an appellate presumption of efficacy.[16]

In *Garza*, we recently observed:

> Once the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court's declaration of the mistrial. The State must demonstrate a "manifest necessity" for a mistrial, which is to say a "high degree" of necessity, and the trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances. That discretion is abused, we have said, whenever the trial court declares a mistrial without first considering the availability of less drastic alternatives and reasonably ruling them out. But the trial court appropriately exercises its discretion to declare a mistrial—that is to say, manifest necessity for the mistrial exists—when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal, when it is simply impossible to continue with trial, or when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error.[17]

The appellant's question in this case, however erroneous or inflammatory, did not make it impossible to continue the trial, nor did it inject something into the record that would result in automatic reversal on appeal. So the only basis for manifest necessity presented here is that the question so contaminated the jury as to render it impossible for the initial tribunal to

---

instruction that the jury disregard an objectionable occurrence is essential only when . . . such an instruction could have had the desired effect, which is to enable the continuation of the trial by a[n] impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been 'cured' by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal.").

[16] *See id*. at 70, 72 (reversing the court of appeals's holding that the instruction to disregard could not have cured the "objectionable occurrence" in that case).

[17] *Garza*, 337 S.W.3d at 909.

arrive at a fair verdict. Could the appellant's jury have arrived at a fair verdict had it been instructed, in no uncertain terms, consciously to recognize the potential for prejudice and consciously to put the appellant's question (and any prejudicial implications they may or may not have drawn from it) out of its collective mind while deliberating?

I am personally inclined to think that a fair trial was not impossible had the trial court given such an instruction to disregard. But I am willing to concede that reasonable minds could disagree on the efficacy of such an instruction in this case. Under these circumstances, the court of appeals did not err to defer to the trial court's judgment on that question, consistent with the dictates of *Arizona v. Washington*. I would only urge that, in order to justify that "highest degree of respect" that the Supreme Court has accorded to the trial court's discretion in this regard, trial judges take great care not to "act precipitately in response to the prosecutor's request for a mistrial."[18] What that means to me is that, when making determinations of manifest necessity *vel non*—that is to say, when balancing the State's right to a fair trial designed to end in just judgments against the defendant's valued right to have his trial completed by a particular tribunal[19]—trial judges must give the same consideration to the remedial potential of an instruction to disregard that they would almost routinely give such an instruction any time it is the *defendant* who seeks a mistrial.

---

[18] *Washington*, 434 U.S. at 511, 515.

[19] *Garza*, 337 S.W.3d at 909 (citing *Wade*, 336 U.S. at 689).

With these additional remarks, I join the Court's opinion.


FILED:       April 9, 2014
PUBLISH